**ARIZONA CENTER FOR LAW
IN THE PUBLIC INTEREST**
2205 E. Speedway Blvd.
Tucson, Arizona  85719
(520)529-1798
(520)529-2927 (fax)

Attorneys for plaintiffs
Joy E. Herr-Cardillo (009718)
Timothy M. Hogan (004567)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Kelly Paisley and Sandra Bahr;  )
                         )   Case No.:
         Plaintiffs,   )
                         )
    vs.                 )   COMPLAINT
                         )
Jan Brewer, in her capacity as Governor of )
Arizona; and Benjamin Grumbles, in his )
capacity as Director of the Arizona )
Department of Environmental Quality; )
Arizona Department of Environmental )
Quality; and the State of Arizona, )
                         )
        Defendants.   )

     Plaintiffs, by and through their attorneys, the Arizona Center for Law in the Public Interest, for their Complaint against defendants allege as follows:

NATURE OF ACTION

     1.     This is a suit to enforce compliance with requirements of the Clean Air Act, 42 U.S.C. §§7401-7627 (the Act) in the metropolitan area of Phoenix, Arizona.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JURISDICATION AND VENUE

2.       The court has jurisdiction over this action pursuant to 42 U.S.C. §7604 and 28 U.S.C. §1316.  Venue lies in the District of Arizona, pursuant to 28 U.S.C. §§1391(b) & (e) and Rule 1, Rules of Practice for the United States District Court for the District of Arizona, because the cause of action arises in the District of Arizona.

ADMINISTRATIVE PREREQUISITE TO THE FILING OF THIS ACTION

3.       On April 8, 2010, plaintiffs served notice of the violation described herein upon the United States Environmental Protection Agency and each of the defendants in the form and manner required under §7604(b) and 40 C.F.R. §§54.1-3.

PARTIES

4.       Under §7604(a)(1) any person may commence a civil action on his own behalf against any person (including the United States and any other governmental instrumentality or agency) who is alleged to be in violation of an emission standard or limitation under the Act.  Pursuant to §7604(f)(3), "emission standard or limitation" includes any condition or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, or vehicle inspection and maintenance programs.

5.       Plaintiffs are residents of Maricopa County and are adversely affected by being forced to breathe air that is less pure than required under the Act.

6.       Defendant Arizona Department of Environmental Quality ("ADEQ") is an agency of the State of Arizona designated by the defendant Governor as the State's official air pollution control agency for purposes of the Act.  Defendant Grumbles is responsible for the direction, operation and control of ADEQ.

7.       All of the defendants are persons within the meaning of §7602(e).

FACTS

8.      Pursuant to the Clean Air Act of 1970, EPA has established national ambient air quality standards (NAAQS) for carbon monoxide (CO), ozone and particulate matter 10 micrometers or less in size (PM-10) as pollution limits necessary to protect the public health and welfare.

9.      Communities that violate the NAAQS are designated as "nonattainment" areas.  42 U.S.C. §7409(d).  For each such area, the Act requires states to submit a state implementation plan (SIP) to provide for attainment of the NAAQS.  These SIPs must be adopted by the states after notice and public hearing, and must contain enforceable measures backed by commitments of adequate resources and legal authority to implement them.

10.      EPA must review each submitted SIP and either approve or disapprove it.

11.      If EPA approves the SIP, in whole or in part, then the approved provisions become federally enforceable.

CARBON MONOXIDE

12.      In 1978, EPA designated Maricopa County a nonattainment area for CO.

13.      In November 1994, Phoenix submitted a CO SIP to the EPA, later supplementing it with an April 4, 1994 submittal. ("1993 SIP Revision").  The 1993 SIP Revision included numerous transportation control measures that had been recently adopted by the Arizona State Legislature in a special session called by Governor Fife Symington to consider "measures necessary to comply with the requirements of the Federal Clean Air Act as amended by P. L. 101-549." Proclamation by the Governor of the State of Arizona dated November 23, 1993.

14.      Among the provisions enacted by the Legislature in the special session was an amendment to A.R.S. §5-522 providing for the use of lottery proceeds to fund expanded public transportation.

15.     In the omnibus air quality bill passed during that special session, A.R.S. §5-522(A) was amended to provide not only for the payment of expenses of the commission and repayment of any advances made from the general fund, but also to require payment of not less than 31.5% of the revenues received, up to a maximum of $18,000,000 to the Local Transportation Assistance Fund ("LTAF") (unless the monies available to the state general fund were less than $45,000,000).  The statute continued to include the payment of 75% of any "excess" funds up to $23,000,000 to the LTAF under Subsection B.  Thus, under the statutory structure enacted in 1993 to comply with the requirements of the CAA, the LTAF would receive a maximum of $41,000,000 from lottery proceeds, provided the lottery generated sufficient funds.

16.     The increase in transit funding was one of the measures that the State relied upon in the 1993 SIP Revision for numeric credit.

17.     Although portions of the 1993 SIP were approved by EPA in 1995, the area continued to experience CO exceedances and in 1996, EPA reclassified Maricopa County as a "serious" nonattainment area.

18.     In July 1999, the State submitted the 1999 Carbon Monoxide Serious Area Plan to EPA.   The 1999 plan continued to include the transportation control measures included in the 1993 Revised Plan, including the transit funding authorized by HB2001.

19.     In June 2003, the State submitted a request for redesignation and maintenance plan as a SIP revision.  On September 22, 2003 EPA published a finding of attainment of the CO standard for Maricopa County. (68 FR 55008)

20.     On March 9, 2005, EPA approved the Revised 1999 MAG CO Serious Area Plan and the Maintenance Plan, which is essentially a continuation of the Serious Area Plan (70 FR 11553).  Thus, the use of lottery proceeds to fund transit authorized by HB2001 and included in the SIP revisions submitted in 1994, was approved by EPA as a part Arizona's CO SIP.

OZONE

21.     Under the 1977 Amendments to the Clean Air Act, Phoenix was designated a nonattainment area for ozone.  After the adoption of the 1990 Amendments to the CAA, in November 1990, Phoenix was classified as a "moderate" ozone nonattainment area.

22.     On November 6, 1997, EPA reclassified the Phoenix area as a "serious" nonattainment area for ozone.

23.     On December 14, 2000, ADEQ submitted the State's Serious Area Ozone SIP for Maricopa County.

24.     In May 2004, the State submitted a One-Hour Ozone Redesignation Request and Maintenance Plan.  The Serious Area Ozone SIP, the Maintenance Plan and the Redesignation request were all approved by EPA on June 14, 2005.

25.     The next day, June 15, 2005, the one-hour ozone standard was revoked and the more stringent eight-hour standard went into effect.

26.     Under the new standard, the Maricopa County eight-hour ozone nonattainment area was classified as "Basic" with an attainment date of June 15, 2009.

27.     The State submitted its Eight Hour Ozone Plan for the Maricopa Nonattainment Area in June 2007 and in February 2009 submitted a Redesignation Request and Maintenance Plan.  The eight-hour plan and maintenance plan, like the one-hour ozone plans before them, rely upon "the legally-binding committed measures in programs and plans that have already been approved by EPA [including]…the Serious Area Carbon Monoxide Plan and Carbon Monoxide Maintenance Plan, approved by EPA on April 8, 2005…" MAG Eight-Hour Ozone Redesignation Request and Maintenance Plan For The Maricopa Nonattainment Area, ES-3.

PARTICULATE MATTER

28.     In 1996, the Phoenix area was classified as a serious PM-10 nonattainment area under the CAA and was required to develop a nonattainment plan that provided for

1    expeditious attainment of both the annual and 24 hours PM-10 standards and met the

2    other applicable CAA plan requirements for serious areas.

3          29.     Since 1996, Arizona has made several SIP submittals and adopted various

4    control measures but continues to violate the 24-hour standard.

5          30.     On July 25, 2002, EPA published its final approval of the PM-10 Serious

6    Area Plan.  The approval also granted the Phoenix area the maximum five year extension

7    of the attainment deadline, giving the area until December 31, 2006 to come into

8    compliance with the NAAQS.

9          31.     The PM-10 Serious Area Plan approved by EPA, like the Ozone plans,

10   relies in part upon committed existing control measures contained in the Serious Area

11   Carbon Monoxide Plan.  Thus, the LTAF funding is also an enforceable commitment

12   under the Serious Area PM10 plan.

13         32.     In March 2007 EPA filed a proposed finding of nonattainment and the final

14   notice of nonattainment was published on June 6, 2007.

15         33.     Under section 189(d) of the CAA, serious PM-10 nonattainment areas that

16   fail to attain are required to submit within 12 months of the applicable attainment date,

17   "plan revisions which provide for attainment of the PM-10 air quality standard and, from

18   the date of such submission until attainment, for an annual reduction in PM-10 or PM-10

19   precursor emissions within the area of not less than 5 percent of the amount of such

20   emissions as reported in the most recent inventory prepared for such area."

21         34.     Arizona submitted its 5%  plan to EPA by the December 2007 deadline.

22                                    REPEAL OF LTAF

23         35.     During the 2010 Seventh Special legislative session, the Arizona

24   Legislature passed House Bill 2012 which amended A.R.S. §5-522 to repeal the deposit

25   of lottery funds into the LTAF.

26

36.     Governor Brewer signed HB2012 into law on March 18, 2010 and, upon information and belief, the repeal will become effective June 15, 2010.

CLAIM FOR RELIEF

37.     The State's repeal of the deposit of lottery funds into the LTAF constitutes a violation of an emissions standard or limitation under the Act within the meaning of §7604(f).

38.     The State is subject to an order of this Court directing the State to comply with its commitments under the SIP pursuant to §7604(a)(1).

WHEREFORE the plaintiffs respectfully request that the Court enter an order providing the following relief:

1.     Directing the State to fully implement its commitment to deposit lottery funds into the LTAF as required by the CO and PM-10 SIPs;

2.     Granting the plaintiffs costs of litigation, including reasonable attorney fees; and

3.     Providing such other relief as the court deems just and proper.


Dated this 14th day of June 2010.


Arizona Center for Law
In the Public Interest
2205 E. Speedway Blvd.
Tucson, Arizona  85719


_____s/Joy E. Herr-Cardillo_____
Joy E. Herr-Cardillo
Timothy M. Hogan